UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HEATHER H.,

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. C25-5098-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends that the administrative law judge ("ALJ") erred by rejecting her testimony and several medical opinions and failing to account for all of her impairments. (Dkt. # 9.) Plaintiff seeks remand for an award of benefits. (*Id.* at 18.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 11.) Plaintiff filed a reply. (Dkt. # 12.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court REVERSES the

ORDER - 1

Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).[1]

## II. BACKGROUND

Plaintiff was born in 1974, has at least a high school education, and has worked as a house cleaner. AR at 32. Plaintiff was last gainfully employed in 2007. *Id.* at 139, 524.

In January 2020, Plaintiff applied for benefits, alleging disability as of January 2020. AR at 18. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* After the ALJ conducted a hearing in February 2022, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 131-71, 285-99. Plaintiff requested review from the Appeals Council, which remanded the matter to the ALJ for, among other things, further evaluation of the medical opinion of Deborah Russell, MS, LMHC. *Id.* at 309-10. The ALJ conducted a second hearing in October 2023, and issued a new decision again finding Plaintiff not disabled. *Id.* at 18-33, 173-202.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, Plaintiff had the severe impairments of coccydynia, bilateral plantar fasciitis and tendon tenosynovitis, major depressive disorder, post-traumatic stress disorder ("PTSD"), borderline personality disorder, and polysubstance use disorder. AR at 22. The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work further limited to occasional climbing, crawling, and exposure to vibration and extreme cold, and frequent right-hand reaching. *Id.* at 25. She could perform simple, routine, predictable tasks with occasional public interaction and few workplace changes. *Id.*

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 2.)

[2] 20 C.F.R. § 416.920.

ORDER - 2

As the Appeals Council denied Plaintiff's request for review, the ALJ's 2023 decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

ORDER - 3

## IV.  DISCUSSION

### A.  The ALJ Did Not Err in Evaluating the Mental Health Opinions

Plaintiff challenges the ALJ's rejection of four mental health professionals' opinions. (Dkt. # 9 at 3-10.) Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 416.920c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

### 1.  Ms. Russell

Ms. Russell, who has treated Plaintiff since 2018, submitted a medical source statement in February 2022 in which she noted diagnoses of major depressive disorder with anxiety, PTSD by history, and recurrent opioid use disorder on substitution treatment. AR at 2219. Ms. Russell opined Plaintiff had "functional limitations" in: (1) understanding, remembering, or applying information, noting that Plaintiff had required extra help in school; (2) interacting with others, noting she hesitated to trust others; (3) concentration, persistence, or pace; specifically, she "requires a slower pace so she can grasp and process what is occurring"; and (4) adapting or managing herself, although her past self-destructive behaviors had been "replaced by an array of daily self-care skills" and she was able to live independently "with overseer support." *Id.* at 2220. Ms. Russell also stated that Plaintiff had "no relevant work skills" and that chronic pain in her tailbone and feet required her to lie down often, which was "not conducive to a work environment or hours." *Id.*

The ALJ found Ms. Russell's opinion unpersuasive because it was unsupported and inconsistent with the medical record. AR at 31. Specifically, the opinion was conclusory, addressed matters reserved to the Commissioner, and was inconsistent with the medical

evidence. *Id.* Plaintiff concedes that the portion of Ms. Russell's opinion about work skills and hours was properly rejected because it addressed a matter reserved to the Commissioner. (Dkt. # 12 at 1.) Nevertheless, citing *Hill v. Astrue*, she argues that Ms. Russell's opinion is not a conclusory assertion of disability but a medical assessment. (Dkt. # 12 at 2 (citing 698 F.3d 1153, 1159-60 (9th Cir. 2012)).) In *Hill*, the Ninth Circuit held the ALJ erred by failing to address in any way a psychologist's opinion that it was unlikely the claimant could work, given their physical and mental conditions. 698 F.3d at 1160 (citing 20 C.F.R. § 404.1527(d)(1)[3]).

*Hill* is distinguishable, however, because, here, the ALJ extensively addressed Ms. Russell's opinion. *See Seibel v. Berryhill*, 2017 WL 615195, at *13 n. 20 (W.D. Wash. Feb. 15, 2017). Moreover, after *Hill* was decided, the controlling regulations were amended to specify that an ALJ will not articulate any analysis of statements on issues reserved to the Commissioner. *Compare* 20 C.F.R. § 416.920b(c)(3) (governing claims filed since March 2017) *with* 20 C.F.R. § 416.927(d)(1) (governing claims filed earlier). Most significantly, in this case, the ALJ provided several other reasons for finding Ms. Russell's opinion unpersuasive. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (inclusion of erroneous reasons harmless where remaining reasons were valid).

The ALJ cited normal psychiatric findings and successful conservative treatment. AR at 31. Plaintiff contends the ALJ erred by relying on normal clinical findings when the record contained significant abnormal findings. (Dkt. ## 9 at 4-6, 12 at 2-3.) The Commissioner, conversely, argues the ALJ acknowledged the abnormal findings but permissibly relied on more frequent normal findings. (Dkt. # 11 at 3-4.) Nearly every claimant's record will contain a mixture of normal and abnormal clinical observations. Here, it was the ALJ's job to identify the

---

[3] Section 404.1527, applicable to Disability Insurance Benefits claims, is identical to § 416.927, applicable to Supplemental Security Income claims like Plaintiff's.

findings most relevant to Ms. Russell's opinion and assess their overall import. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (explaining that where medical evidence is in dispute, "the ALJ is the final arbiter with respect to resolving ambiguities.").

Plaintiff contends that several treatment notes the ALJ relied on are irrelevant because they were made by non-psychiatric medical providers. (Dkt. # 9 at 4.) All of her providers were qualified to observe her psychiatric state, however. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) ("a duly licensed physician . . . can practice and render psychiatric services"). Plaintiff next contends that the ALJ erred because some of the records on which he relied in rejecting Ms. Russell's opinion were from medical opinions that the ALJ also rejected. (Dkt. # 9 at 5.) The ALJ reasonably accepted the medical sources' clinical *observations*, however, even if not their opinions.

The ALJ noted abnormal findings of anxious mood in April 2020, and dysphoric mood and impaired concentration in April and June 2021. AR at 989, 1720-21, 1916-17. But even in those records, Plaintiff's other mental findings were largely normal. *See id.* The ALJ further noted normal mood, affect, and behavior in February through August 2020, June and November 2021, and January, March, May, June, and August 2023. *Id.* at 946, 959, 969-70, 976, 978, 980, 1003, 1302, 1385, 1388, 1480, 1720, 2058, 2880, 2896, 2904, 2909, 2919. On this record, the ALJ reasonably concluded that infrequent abnormal findings were outweighed by the bulk of the record reflecting normal findings. Conflict with the medical evidence was a valid reason to discount Ms. Russell's opinion. *See Ford*, 950 F.3d at 1155.

With regard to improvement with treatment, Plaintiff argues that the ALJ erred by citing treatment notes showing improvement and "ignoring" notes that did not. (Dkt. ## 9 at 6, 12 at 4.) The Commissioner contends the issue before this Court is whether substantial evidence supports

ORDER - 6

the ALJ's decision, not whether the Court could find substantial evidence in the record to support a finding of disability. (Dkt. # 11 at 6 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997)).) Plaintiff disputes this premise, arguing that the issue is "whether Ms. Russell's medical opinion was supported and consistent." (Dkt. # 12 at 4.) Although that was the issue before the ALJ in making the disability determination, this Court does not make its own disability determination. It may disturb the ALJ's decision only if it rests on legal error or is not supported by substantial evidence. *See Smartt*, 53 F.4th at 494.

The ALJ found that Plaintiff's mental health symptoms responded well to conservative treatment consisting of medication and therapy. AR at 31. The ALJ pointed to treatment notes indicating Plaintiff was stable and content with her current medications in August 2020. *Id.* at 1389. She remained stable and was doing well through August 2023, except for a few instances of increased symptoms due to situational stressors, such as her father's death in July 2021. *Id.* at 2062, 2064, 2069, 2073, 2081, 2088, 2092, 2094, 2097, 2108, 2116, 2351, 2356, 2881, 2897, 2900, 2902, 2913, 2915, 2920, 2926, 2930, 2932, 2936, 2941, 2954, 2958, 2960, 2962. Plaintiff argues that treatment records reflect continuing anxiety in March and May 2020 and difficulty sleeping in November 2021, indicating she did not improve so much that she could work.[4] (Dkt. # 9 at 6 (citing AR at 945-46, 1384-85, 2058); dkt. # 12 at 3.) In March 2020, Plaintiff still had "some anxiety s[ymptoms,]" although her doctor found her mood was euthymic, she had been stable since last visit, there was no resurgence of psychiatric symptoms, and she herself reported general stability. AR at 945-46. In May 2020, Plaintiff reported some anxiety about an upcoming biopsy, and her doctor noted a euthymic and anxious mood. *Id.* at 1384-86. In November 2021,

---

[4] Plaintiff also notes the ALJ erroneously cited her treatment plan as if it were a clinical observation. (Dkt. # 9 at 6 (citing AR at 2055, 2061, 2063, 2065-66, 2073, 2075).) Even setting aside the erroneous citations, the weight of the evidence supports the ALJ's decision.

ORDER - 7

1   Plaintiff reported that "things have been very good lately" but she had been waking up around 3
2   a.m. unable to get back to sleep. *Id.* at 2057-58. Her doctor observed euthymic mood, assessed
3   Plaintiff as "doing fairly well[,]" and raised the dosage of one of her medications to help with
4   sleep. *Id.* at 2058-59. While the record reflects some anxiety symptoms at times, these three
5   treatment notes do not detract from the ALJ's conclusion based on the longitudinal record that,
6   overall, Plaintiff responded well to conservative treatment. *Id.* at 31. Successful conservative
7   treatment is a valid reason to find a medical opinion unpersuasive. *See Woods*, 32 F.4th at 794.
8          On reply, Plaintiff makes a new argument that her improvement began after she had been
9   unable to work for twelve months, and therefore, the ALJ was required to assess that period
10  separately. (Dkt. # 12 at 4.) What twelve-month period Plaintiff is referring to is unclear, as
11  Plaintiff alleges disability beginning January 2020 and the ALJ noted improvement in August
12  2020. Regardless, arguments raised for the first time in a reply brief are waived. *Vasquez v.*
13  *Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013) ("Because we do not consider issues raised for
14  the first time in reply briefs, we deem this late-raised argument forfeited.").
15         Contradiction with the medical record and improvement with conservative treatment
16  were valid reasons to discount Ms. Russell's opinion. The Court concludes the ALJ did not err in
17  finding her opinion unpersuasive.
18              2.      Terilee Wingate, Ph.D.
19         In April 2021, Dr. Wingate examined Plaintiff and reviewed her report from a previous
20  psychological evaluation in November 2018. AR at 1913. Dr. Wingate opined that Plaintiff had
21  marked limitations in maintaining punctual attendance without special supervision, maintaining
22  appropriate behavior in a work setting, and completing a normal work day and work week
23  without interruptions from psychologically based symptoms. *Id.* at 1915. She wrote that

1  Plaintiff's symptoms continued despite therapy and medications; Plaintiff's health issues

2  exacerbated her depressed mood and anxiety; and her prognosis for work was "guarded to poor."

3  *Id.* at 1916.

4      The ALJ found Dr. Wingate's opinion unpersuasive as it was a checkbox form without

5  citation to objective evidence and without support in treatment notes. AR at 30-31. The ALJ also

6  discounted the opinion as inconsistent with normal mental health findings, successful

7  conservative treatment, and Plaintiff's activities. *Id.* at 31. Plaintiff argues Dr. Wingate's opinion

8  is supported because some treatment notes reflect stress, worry, and trauma. (Dkt. # 9 at 7-8.)

9  Plaintiff relies on her briefing related to Ms. Russell's opinion to challenge the ALJ's second and

10 third reasons. (*See id.* at 7; dkt. # 12 at 4.) Plaintiff addresses the ALJ's final reason regarding

11 her activities only in her reply brief. (Dkt. # 12 at 5.)

12     As discussed above, normal mental status findings and improvement with conservative

13 treatment were valid reasons, supported by substantial evidence, to discount opinions of

14 disabling mental limitations. The ALJ did not err by finding Dr. Wingate's opinion unpersuasive

15 on these grounds. The Court need not address the ALJ's remaining reasons because, even if

16 erroneous, the outcome of the disability decision would not be affected. *Ford*, 950 F.3d at 1154.

17     3.    *Reginald Adkisson, Ph.D.*

18     In June 2021, Dr. Adkisson examined Plaintiff and reviewed Dr. Wingate's 2018

19 evaluation and a June 2020 adult services record. AR at 1718. Dr. Adkisson opined Plaintiff had

20 moderate limitation in the ability to reason, adequate recall for activities of daily living, "more

21 concrete than abstract" information processing, slow computation, the ability to persist to

22 complete activities, severe limitation in social interaction, and moderate limitation in adaptation.

23 *Id.* at 1722.

ORDER - 9

1    The ALJ found Dr. Adkisson's opinion "mostly persuasive" but rejected the social interaction limitations as inconsistent with the medical record, which revealed Plaintiff was typically cooperative, pleasant, friendly, had normal and appropriate speech, good eye contact, normal mood and affect, and behaved appropriately. AR at 30. The ALJ also noted that Dr. Adkisson's opinion "did not provide any actual functional limitations." *Id.*

Plaintiff argues that the ALJ relied on the same citations and erroneous reasoning as in discounting Ms. Russell's and Dr. Wingate's opinions. (Dkt. # 9 at 9.) On reply, Plaintiff argues the ALJ had a duty to recontact Dr. Adkisson if his report was too non-specific. (Dkt. # 12 at 6 (citing 20 C.F.R. § 404.1520b(b)).) The regulations require an ALJ to seek additional evidence "[i]f the *evidence in your case record*" as a whole is insufficient, not just a single medical opinion in the case record. 20 C.F.R. § 416.920b(b) (emphasis added).

The ALJ's finding of typically normal mental status results, including pleasant, normal attitude and cooperative, appropriate behavior, was supported by substantial evidence. *See* AR at 946, 959, 969-70, 976, 980, 1003, 1385, 1388, 1480, 1720, 2058, 2880, 2896, 2904, 2909, 2919. The ALJ did not err by discounting Dr. Adkisson's opinion of severe social limitations as inconsistent with the medical record.

    4.  *David Morgan, Ph.D.*

In March 2023, Dr. Morgan examined Plaintiff and reviewed unspecified records. AR at 2560. Dr. Morgan opined Plaintiff had severe limitations in maintaining punctual attendance, learning new tasks, adapting to changes in routine, making simple decisions, communicating and performing effectively, maintaining appropriate behavior, and completing a normal work day and work week. *Id.* at 2562.

The ALJ found Dr. Morgan's opinion unpersuasive because it overstated Plaintiff's limitations and was unsupported and inconsistent with the record. AR at 31. Plaintiff argues the opinion is supported by Dr. Morgan's findings of anxious mood, poor performance on memory and concentration tests, and diminished fund of knowledge. (Dkt. # 9 at 9-10.) The Commissioner contends the Court must look to all pages of the ALJ's decision to infer that, as with the other medical opinions the ALJ found unpersuasive, inconsistency with the record refers to normal findings and improvement with conservative treatment. (Dkt. # 11 at 9.) Plaintiff argues on reply that rejecting all four medical opinions should be a "red flag" because the opinions were consistent with each other. (Dkt. # 12 at 6-7.)

The Court finds that, while the ALJ may have explained this portion of his decision "with less than ideal clarity," his "path may reasonably be discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)); *see also Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (finding substantial evidence supported the ALJ's decision where, "[l]ooking to *all* the pages of the ALJ's decision, . . . the ALJ had, in fact, explained" the basis of the ruling). Plaintiff relies on a single examination but, as discussed above, the ALJ's analysis of the longitudinal record throughout his decision consistently shows largely normal mental status findings. Even Dr. Morgan's examination revealed normal speech, attitude and behavior, affect, thought process and content, orientation, perception, abstract thought, and insight and judgment. AR at 2563-64. The Court therefore concludes the ALJ did not err by discounting Dr. Morgan's opinion as inconsistent with the medical record.

### B. The ALJ Erred in Evaluating Plaintiff's Testimony

Plaintiff contends the ALJ erred by discounting her testimony of mental and physical limitations. (Dkt. # 9 at 10-16.) Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

The ALJ discounted Plaintiff's testimony of mental impairments as inconsistent with overall normal mental status findings and improvement with treatment. AR at 28-29. As discussed above, the ALJ's findings were supported by substantial evidence. Conflict with objective medical evidence and improvement with treatment are clear and convincing reasons to discount a claimant's testimony. *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Smartt*, 53 F.4th at 500 (improvement with treatment is a valid reason to discount claimant testimony).

The ALJ rejected Plaintiff's testimony that she could not sit or stand long due to tailbone and foot pain based on inconsistency with the medical record and improvement with conservative treatment. AR at 27-28. The ALJ acknowledged that the medical record confirmed "chronic pain and tenderness" in her tailbone and "pain . . . and digital contractures" in her feet regularly, but noted that other physical findings, such as gait, were often normal and Plaintiff was in no acute distress. *Id.* at 27-28. The ALJ cited treatment records supporting his findings of tailbone and foot pain. *See, e.g., id.* at 973, 1480, 1590, 1692, 1708, 2268-69. In addition,

Plaintiff reported to various providers that she had chronic tailbone pain and such significant foot pain such that she could not walk for more than 15 minutes. *Id.* at 1373, 1375, 1476, 1986, 1993, 2014. Her therapist observed that she had difficulty walking from the waiting room to the office and had difficulty sitting still even on a cushion she brought. *Id.* at 2967. The Court concludes that the ALJ's finding of tailbone and foot pain was supported by substantial evidence.

The records the ALJ cited indicate that normal gait and lack of "acute distress" do not undermine Plaintiff's testimony of pain with extended walking and sitting. On February 21, 2020, for example, Plaintiff was assessed with acute low back pain in addition to her chronic low back pain, but exhibited normal gait and strength and "[n]o distress." AR at 1308-09. Plaintiff was prescribed methocarbamol and methylprednisolone. *Id.* at 1309. Plaintiff was apparently able to walk with a normal gait within the doctor's office despite the pain.

On July 20, 2020, due to swelling and moderate pain in the lower legs and feet, Plaintiff's podiatrist directed her to rest, ice, and elevate her legs, but observed "no acute distress." AR at 1456-57. Following up a month later because the swelling remained and pain had increased, the podiatrist applied multi-layer compression dressings. *Id.* at 1710-13. Despite a reported pain level of 9/10, the podiatrist observed "no acute distress." *Id.* at 1710, 1712; *see also id.* at 1706, 1708. While "no acute distress" is not defined, it clearly does not indicate Plaintiff is not in pain. The Court therefore concludes the ALJ's finding that the medical evidence contradicted Plaintiff's testimony was not supported by substantial evidence.

The ALJ also found that Plaintiff's treatment was conservative. AR at 28. Plaintiff received injections for foot and ankle pain in March, April, May, and June 2021, and June and July 2022. *Id.* at 1684, 1689, 2226, 2235, 2551, 2547. In December 2020 and again in December 2021, Plaintiff received steroid injections to treat exacerbation of tailbone pain. *Id.* at 1590-91,

ORDER - 13

2269-70. At the December 2021 visit, Plaintiff's provider discussed "different options," including "conservative treatment and injections." *Id.* at 2269. This suggests that such injections are not considered conservative treatment. The Ninth Circuit, moreover, has generally held that spinal injections are non-conservative treatment. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). The Court concludes the ALJ's finding of conservative treatment was not supported by substantial evidence.

The ALJ did not provide a valid reason to discount Plaintiff's testimony regarding her physical impairments. Accordingly, the Court concludes that rejecting this testimony constituted harmful error.

### C.   Additional Impairments

Plaintiff contends the ALJ erred by failing to find that her left partial mastectomy and essential tremor were severe impairments and to assess related reaching, lifting, handling, or fingering limitations, or to consider the time required to recover from surgery and undergo radiation treatment. (Dkt. # 9 at 16-17.) The ALJ found that both of these impairments were non-severe because there was no evidence they significantly limited basic work functions. AR at 22. The Commissioner argues Plaintiff fails to show error because she points to nothing more than her own testimony. (Dkt. # 11 at 14-15.) As discussed above, however, the ALJ must reconsider Plaintiff's testimony about her physical impairments on remand. Thus, these matters will be before the ALJ and the Court need not address them at this juncture.

### D.   Scope of Remand

Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be

ORDER - 14

remanded for an award of benefits: (1) the ALJ must have failed to provide legally sufficient reasons for rejecting evidence; (2) the record must be fully developed, leaving no useful purpose for further administrative proceedings; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even if these conditions are met, the Court has the discretion to remand for further proceedings where the record as a whole creates serious doubts about a claimant's disability status. *Id.* Only in rare circumstances should a case be remanded for benefits. *See Treichler*, 775 F.3d at 1100.

Plaintiff requests the Court credit her testimony and the opinions of Ms. Russell, Dr. Wingate, Dr. Adkisson, and Dr. Morgan as true and exercise its discretion to remand for benefits. (Dkt. # 9 at 18.) As the Commissioner notes, Plaintiff makes no effort to show that the ordinary remand rule should not apply. (Dkt. # 11 at 15-16.) On reply, Plaintiff notes that the ALJ did not provide clear and convincing reasons to reject her testimony that she must alternate between sitting and standing due to tailbone and foot pain, and that the vocational expert testified sitting and standing at will would require accommodation, precluding competitive work. (Dkt. # 12 at 9.)

While this argument addresses the first and third factors in the analysis, it completely ignores the second factor. The Court finds the record is not fully developed. There is, for example, a remarkable dearth of medical opinions on Plaintiff's physical impairments. *See* AR at 29-31 (aside from State agency consultants' opinions, the ALJ analyzed only mental health opinions). Additionally, the amount of time Plaintiff indicated she could sit either changed over time or was inconsistent. *Compare id.* at 192 (2023 testimony: can sit up to an hour on special pillow) with *id.* at 157 (2022 testimony: can sit 20 minutes). It is the ALJ's role to resolve these

ORDER - 15

ambiguities in the first instance. *See Tommasetti*, 533 F.3d at 1041 ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (noting that resolving testimony conflicts is purely an agency function); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) ("we are not triers of fact"). Consequently, further proceedings are warranted.

## V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reassess Plaintiff's testimony as to her physical impairments.

Dated this 25th day of August, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge